# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN KING, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case no. 4:17cv01233 PLC |
| | ) | |
| RICHARD ADAMS, | ) | |
| | ) | |
| Respondent.[1] | ) | |

## MEMORANDUM AND ORDER

Petitioner John King seeks federal habeas corpus relief from a Missouri state court judgment entered after a jury trial. 28 U.S.C. § 2254. Respondent Richard Adams filed a response to the petition, along with copies of the materials from the underlying state court proceedings. For the reasons set forth below, the Court denies the petition.[2]

## I. Background

### A.    Pretrial proceedings

The State charged Petitioner with committing in the City of St. Louis, Missouri, between February 14, 2009 and September 4, 2011, two counts of the Class C felony of deviate sexual

---

[1] The Court substitutes Richard Adams, the present Warden of the Missouri Eastern Correctional Center ("MECC") where Petitioner is currently in custody, for Jennifer Sachse, who was the Warden of the MECC and identified as the Respondent at the time Petitioner filed this habeas proceeding. Fed. R. Civ. P. 25(d); Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules").

In the caption of his petition, Petitioner mentions the Attorney General of the State of Missouri as a possible respondent [ECF No. 1]. Petitioner, however, challenges a judgment that imposes a term of imprisonment for the only offense of which Petitioner was convicted during the underlying state court proceedings and for which Petitioner is now in custody. Because Petitioner is not challenging a state court judgment that subjects him to "future custody," the Attorney General of the State of Missouri is not a proper respondent in this Section 2254 habeas proceeding. See, e.g., Habeas Rule 2(b).

[2] The parties consented to the exercise of authority by a United States Magistrate Judge pursuant to 28 U.S.C. Section 636(c).

assault in violation of Missouri Revised Statutes Section 566.070.[3]  In Count I, the State charged

that Petitioner had "deviate sexual intercourse with M.J., near the time of M.J.'s graduation,

knowing that he did so without the consent of M.J."  In Count II, the State charged that Petitioner

had "deviate sexual intercourse with M.J. knowing that he did so without the consent of M.J."  The

State also charged Petitioner as a prior and persistent offender under Section 558.016 because

Petitioner, in 1973, 1975, and 1995, pleaded guilty to or was convicted of more than one felony

offense.[4]

Prior to trial, Petitioner filed notices of his intent to introduce at trial business records from

the St. Louis Community Release Center ("SLCRC") and St. Louis University Hospital ("SLU

Hospital").  Petitioner also filed a motion to exclude from trial M.J.'s videotaped statements and

testimony regarding those statements as not satisfying the reliability requirement of Section

491.075 and as lacking a sufficient showing that M.J. fell within the statute's "vulnerable person"

definition.

The State filed a pretrial motion to treat M.J., who was then twenty-one years old, as a

"vulnerable person" pursuant to the version of Section 491.075 that became effective August 28,

2012, or approximately four months before the start of trial.  In its motion, the State specifically

asked the trial court:  (1) to treat M.J. as a vulnerable person, (2) to "admit [M.J.'s] oral and

---

[3] Information in lieu of indictment, Legal File, Resp't Ex. A, at 71-72 [ECF No. 19-2].

[4] Additionally, in each Count, the State charged Petitioner with being a

predatory sexual offender under Section 558.018 [now 566.125], RSMo, punishable by sentence to an extended term of life imprisonment, with the court to set the minimum time required to be served before eligibility for parole, conditional release or other early release, which minimum time shall be not less than fifteen years, under Sections 558.018 and 557.036, RSMo, in that on or about March 28, 1995, [Petitioner] . . . pleaded guilty [to] Sodomy in the 22nd Circuit Court of the State of Missouri.

The State did not, however, "seek[] to prove" that status during trial.  Trial Tr., Resp't Ex. A, at 486 [ECF No. 19-1].

videotaped statements . . . as substantive evidence," and (3) to "conduct a hearing under § 491.075 to determine whether [M.J.]'s statements are admissible as substantive evidence." Noting there was "no caselaw to assist in understanding the statutory definition" of "vulnerable person," the State argued M.J. fell within that definition. The State quoted the statutory definition of a "vulnerable person:" "a person who, as a result of an inadequately developed or impaired intelligence or a psychiatric disorder that materially affects ability to function, lacks the mental capacity to consent, or whose developmental level does not exceed that of an ordinary child of fourteen years of age." Mo. Rev. Stat. § 491.075.5.

B.    Trial proceedings

(1)    *Hearing under Section 491.075*[5]

After swearing in the jury, the trial court conducted, out of the presence of the jury, a hearing under Section 491.075 during which four persons testified. Lynette Swift Elliott, the special education supervisor and custodian of the records of students in the special education program at Roosevelt High School, testified about (1) M.J.'s diagnosis and his low IQ score which falls within the range Ms. Elliott referred to as "[i]ntellectual disability" from 1999 and (2) his Individualized Education Plan ("IEP") for 2009, his senior year, that revealed he was eighteen years old and "was functioning at a fourth grade level in all his academic areas." Ms. Elliott also

---

[5] In addition to the "vulnerable person" definition in Section 491.075.5, Missouri Revised Statutes Section 491.075 states in relevant part:

1.  A statement made by a child under the age of fourteen, or a vulnerable person, relating to an offense under chapter 565, 566, 568 or 573, performed by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1)  The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) (a) The child or vulnerable person testifies at the proceedings; . . . .

estimated the typical fourth grader is ten years old; and, after seeing M.J.'s high school transcript, stated M.J. had graduated from high school.

Beverly Tucker, a forensic interviewer at the Children's Advocacy Center of Greater St. Louis ("CAC"), testified that she had conducted approximately 2,000 forensic interviews of children who are allegedly victims of physical abuse, victims of sexual abuse or witnesses to violent crimes. Based on her training and experience, she stated it is not uncommon for alleged victims of sexual abuse to recant their disclosure of the alleged abuse. Ms. Tucker interviewed M.J., who was then twenty years old, on September 13, 2011, and videotaped that interview.

Hassan King, one of M.J.'s brothers, who is approximately ten years older than M.J., testified about conversations he had with M.J. on and after September 4, 2011. He explained that he brought M.J. to his home for a barbecue that Labor Day weekend. After the barbecue, M.J. said he did not want to go home because "crazy things w[ere] going on at the house" and Petitioner "had been doing things to him." M.J. would not explain further, remained quiet when Hassan King asked what he meant. M.J. spent the night at Hassan King's home and the next day Hassan King asked M.J. what he meant about the "crazy things" going on where M.J. lived. M.J. responded that Petitioner "had been putting his penis in him."

Since those conversations, Hassan King testified, M.J. told him, a "couple days" "after [they] . . . talk[ed] to the detective and the . . . prosecutor" about the incidents, that the incidents did not happen. Otherwise, Hassan King stated, M.J. told him that the incidents had occurred.

Detective Andre Smith, who was assigned to the sex crimes section of the St. Louis Metropolitan Police Department, testified about conducting a "cursory interview" of M.J. on September 7, 2011 before referring him to the CAC.

After reviewing M.J.'s high school records, including the transcript and IEP, as well as Ms. Tucker's videotaped interview of M.J., (all of which had been admitted during the hearing), and considering the testimony presented during the hearing, the trial judge decided M.J. was a "vulnerable person" under the part of the statutory definition that describes "a person . . . whose developmental level does not exceed that of any ordinary child of fourteen years of age." The trial judge also concluded there was sufficient indicia of reliability to allow introduction during trial of M.J.'s statements except with respect to the statements M.J. made to Detective Smith.

(2)  *Jury trial*

During trial, the State played the videotaped recording of M.J.'s interview at the CAC and presented the testimony of Hassan King, M.J., and Ms. Tucker. As part of his testimony, M.J. stated he graduated from high school in May 2009; that several times after his graduation, Petitioner put his penis in M.J.'s "butt"; and M.J. told Petitioner he did not like it, he did not want to do it, and to stop.

Petitioner introduced, without objection, his medical records beginning on April 16, 2009, and did not testify at trial. Petitioner did, however, present the testimony of four witnesses: Assistant Circuit Attorney Colleen Lang, who worked on Petitioner's case until approximately August of 2012; Petitioner's brothers: Johnnie J. King and Rickey King; and Arnold Bullock, M.D., a board-certified urologist at the Washington University School of Medicine.

Ms. Lang testified about a meeting she had in late November 2011 with M.J., Hassan King, their mother (Ernestine King), and Petitioner's attorney. At the November 2011 meeting, Ms. Lang testified, M.J. stated Petitioner did not abuse him. During cross-examination, Ms. Lang testified that on other occasions M.J. had told her that Petitioner abused him. Specifically, Ms. Lang stated M.J. reported to her that Petitioner had abused him: (1) during a meeting of Hassan

King and M.J. in her office around September 9, 2011; (2) just before and during his appearance in front of the grand jury;[6] and (3) when Ms. Lang and an investigator visited M.J. at Hassan King's home at the beginning of June 2012. Ms. Lang asked M.J. during the June 2012 conversation why he had told her (in November 2011) that the abuse by Petitioner had not happened and she said M.J. responded that "he wanted to forget about it."

Johnnie J. King and Rickey King each testified that they participated in a telephone conversation at an unspecified time months before trial with their sister (Denise King), their mother (Ernestine King), Hassan King, and M.J. Johnnie J. King and Rickey King each stated that, during that telephone conversation, M.J. said that Petitioner did not abuse him.

Dr. Bullock testified from review of Petitioner's records, that Petitioner had a left inguinal hernia repair on April 16, 2009, followed the next day by a catheterization for urinary tract symptoms with a history of an enlarged prostate. Dr. Bullock surmised, based on information in the records, that Petitioner was discharged from the hospital on April 17, 2009, without a catheter. Furthermore, Dr. Bullock testified that nothing in the records showed that Petitioner had a catheter from April 17, 2009 to April 2, 2010. Between May 14, 2010 and June 28, 2010, Dr. Bullock stated, Petitioner had three transurethral re-section of the prostate procedures (or TURPs, for short). Without specifying dates, Dr. Bullock noted Petitioner also "had bouts where he had blood in his urine and had to [go] to the emergency room . . . to get his catheters irrigated." Dr. Bullock testified "[t]here is no mention in the record about erectile function" so he could not comment on Petitioner's "ability to generate an erection." Dr. Bullock also opined that "to have intercourse [with] any type of a catheter in . . . would be challenging," and, more specifically stated that while it may be "doable . . . [it] would be very unusual and it would hurt."

---

[6] On September 27, 2011, the State filed a two-count indictment against Petitioner.

The trial court found Petitioner was a prior and persistent offender, and denied Petitioner's motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence. The jury found Petitioner guilty of the deviate sexual assault charged in Count I and not guilty of the deviate sexual assault charged in Count II.

(3)    *Sentencing*

In his motion for a new trial, Petitioner argued: (1) the trial court erred and violated his rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments by denying his motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence because the State did not meet its burden of proving each element of the charged offense; and (2) the trial court erred and violated his rights to due process, a fair trial, and a fair and impartial jury under the Fifth, Sixth, Eighth, and Fourteenth Amendments by overruling: (a) Petitioner's motion to strike Juror No. 609, (b) Petitioner's motion to exclude the testimony of Ms. Elliott during the Section 491.075 hearing; (c) Petitioner's objection during the Section 491.075 hearing to the admission of Petitioner's school records; and (d) by overruling Petitioner's objection to and admitting during trial Hassan King's and Beverly Tucker's testimony, as well as M.J.'s videotaped statement, because the State did not satisfy the vulnerable person and reliability requirements of Section 491.075. The trial court denied the motion prior to sentencing. The trial court sentenced Petitioner to a fifteen-year term of imprisonment.

C.    Direct appeal

Petitioner presented three issues on direct appeal. First Petitioner argued the trial court erred and violated Petitioner's right to due process under the Fifth and Fourteenth Amendments because the evidence was insufficient to support the deviate sexual assault conviction due to conflicts in the uncorroborated testimony regarding whether and how the abuse occurred, as well

as consent.  Second, Petitioner contended the trial court erred and violated Petitioner's right to due process under the Fifth and Fourteenth Amendments because, due to conflicting testimony, the State failed to prove beyond a reasonable doubt that the acts occurred without M.J.'s consent and that Petitioner knew or was aware that M.J. did not consent.  Third, Petitioner asserted the trial court erred and violated his rights to due process, confrontation, and a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments by admitting and playing  M.J.'s videotaped interview and admitting Ms. Tucker's and Hassan King's testimony because the 2012 version of Section 491.075 "did not apply retroactively to [Petitioner]'s case," there was insufficient evidence that M.J. was a vulnerable person under that statute, and there was insufficient indicia of the reliability of M.J.'s out-of-court statements as required by that statute.

The Missouri Court of Appeals for the Eastern District affirmed the trial court's judgment in an unpublished per curiam order accompanied by a memorandum sent to the parties setting forth the reasons for the order.  See State v. King, No. ED99590 (Mo. Ct. App. filed June 3, 2014), Resp't Ex. E [ECF No. 16-3].  In relevant part, with respect to Petitioner's third point, the Court of Appeals found the trial court did not err in applying the 2012 version of Section 491.075 (which added the provision regarding a "vulnerable person").  Id. at 14-15.  The Court of Appeals also concluded that "the trial court did not err in finding M.J. was a 'vulnerable person' under Section 491.075, RSMo Cum. Supp. 2012.  Id. at 15.  Specifically, in disagreeing with Petitioner's argument that "the trial court erred . . . based on an insufficiency of evidence to make this finding," the Court of Appeals stated:

> Under the statute, a "vulnerable person" includes one who has "inadequately developed or impaired intelligence" and "lacks the mental capacity to consent," or "whose developmental level does not exceed that of an ordinary child of fourteen years of age."

> . . . [W]e review the evidence in the light most favorable to the trial court's ruling. The evidence showed that M.J.'s IQ was at a level considered to be mentally retarded or intellectually disabled. M.J. functioned at the level of a fourth grader, which is a 10-year-old. The cumulative evidence of testimony from Ms. Tucker, Hassan King, and the special education supervisor, and the CAC interview itself, was more than sufficient to support the finding that M.J. functioned beneath the level of a 14-year-old, and thus, was a "vulnerable person."

Id. The Court of Appeals further concluded that M.J.'s out-of-court statements had sufficient reliability to be admissible during trial. Id. at 16-19. The Court of Appeals issued its mandate on Oct. 3, 2014.[7]

D.     Post-conviction motion proceeding

After the direct appeal concluded, Petitioner filed a pro se motion for post-conviction relief ("PCR motion") under Missouri Supreme Court Rule 29.15. In that motion, Petitioner set forth multiple claims that his trial counsel provided ineffective assistance through specified conduct and that the trial court erred in several enumerated ways.

Through appointed counsel, Petitioner filed an amended PCR motion presenting two ineffective-assistance-of-trial-counsel claims. In particular, Petitioner first urged his trial attorney "failed to offer . . . into evidence [medical records from St. Alexius Hospital regarding medical care M.J. received on September 15, 2011,] which showed that M.J. did not have anal scarring even though he said he had been subjected to anal intercourse at least twenty times by [Petitioner] and, more importantly, . . . confirmed that M.J. denied to doctors he had been threatened or abused." Second, Petitioner argued his trial attorney "fail[ed] to present partial alibi evidence based on monitoring records at the [SLCRC] which showed that for much of the time when he was alleged to have committed an act of deviate sexual intercourse against M.J. at M.J.'s house, [Petitioner] was actually at the SLCRC." Contending the SLCRC records "would have severely

---

[7] See October 3, 2014 entry on docket sheet for State v. King, No. ED99590 (Mo. Ct. App. filed Feb. 7, 2013) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited July 14, 2021)).

weakened M.J.'s credibility," Petitioner urges that, if they had been admitted at trial, "there is a reasonable probability that the jury would have concluded that M.J. had not been subjected to anal intercourse at all." Petitioner also requested an evidentiary hearing in his amended PCR motion and by a separate "request for an evidentiary hearing."

The motion court held an evidentiary hearing at which Petitioner and his trial attorney testified. The motion court also admitted, without objection, the St. Alexius Hospital records for care M.J. received on September 15, 2011, as well as "in and out records documenting times when" Petitioner left the SLCRC "on a day-to-day basis, spanning . . . a period from January 31st, 2009, through to August 6th, 2010." Petitioner's trial attorney testified that he and Petitioner met approximately eight times prior to trial and discussed the "pros and cons of admitting both the medical records and the [SLCRC] records."

Petitioner testified he was a resident of the SLCRC from September 20, 2008 until summer 2010, and was allowed to checkout of the facility to visit family on Saturdays from either seven o'clock until eleven o'clock in the evening or from five o'clock until nine o'clock in the evening. Although Petitioner testified that he visited family on Saturday evenings because his wife attended church from the morning to late afternoon each Saturday, Petitioner also testified that his wife started attending church in the Fall of 2010. Petitioner acknowledged that his attorney had the SLCRC records during trial, and had told Petitioner he did not want to use the records because they had "Department of Corrections" on them (because Petitioner was at the SLCRC while on parole due to a felony sodomy charge).

Petitioner's trial attorney testified that he received the medical records "in [the] discovery packet from the State." He did not introduce them during trial because "the timeline was not the best as far as proximity to the allegations of criminal activity . . . . It was highly likely that the

State would have made the point of the delay in timeline and that the medical records were completely not relevant to the charges." Additionally, Petitioner's trial attorney recalled that "the contents of the medical records more or less came out through witness testimony."

With respect to the SLCRC records, Petitioner's trial attorney stated he remembered the State's attorney telling him she had a witness from the SLCRC present to testify in rebuttal "regarding the validity of the records in terms of how perfect they [we]re in documenting an inmate's arrival and departure, . . . [that] they were not a hundred percent accurate, [and] that people could come and go without necessarily signing in or out." Petitioner's trial attorney noted the partial alibi was not the "strongest leg" they had. Rather, Petitioner's trial attorney testified, he did not "want . . . to come across" to the jury as "disingenuous" so he "chose not to submit [the SLCRC] documents" because they had M.J.'s recantations, including through the testimony of an assistant prosecuting attorney who had worked on the case, and a urologist testifying about Petitioner's health and ability to engage in the alleged conduct. Petitioner's trial attorney explained that "[t]he timeline in the case was very unknown and nebulous. There were two different charges, the first count had a much more specific timeline. The [timeline for the] second count was much more vague." The trial attorney did not recall the number of times the alleged conduct reportedly occurred "being an issue at trial" but instead the issue was "that [Petitioner] did it." As to the latter, counsel "remember[ed] arguing to the jury that there is a lack of certainty and a lack of corroboration in the testimony . . . [and he did not] recall thinking that we're going to beat this case on the timeline." More specifically, Petitioner's trial attorney stated

> The way that we strategized it was to beat it with the recantation[,] with the State's own witnesses[,] to make the case as simple as possible, its credibility beyond a reasonable doubt. . . . . [He considered] what damage [the SLCRC witness would have done] to the validity of the records [on rebuttal] and . . . [concluded the partial alibi] really wasn't the main issue.

Petitioner's trial attorney also testified that his rapport with the jury was important in this type of case, especially when the defendant does not testify.

In denying Petitioner's amended PCR motion, the motion court described an ineffective assistance of counsel claim as requiring a showing that counsel's performance was deficient and that the defendant was prejudiced by the performance. Finding that "[t]he choice of witnesses and defense tactics are ordinarily matters of trial strategy," the motion court concluded the first claim was without merit because Petitioner's trial attorney "had the records in his possession, assessed whether they would be helpful at trial, and made a reasonable strategic decision not to use the records." Additionally, the motion court found Petitioner "cannot show prejudice because, as trial counsel testified, the relevant information came into evidence through other sources." Finally, the motion court concluded Petitioner's second ineffective-assistance-of-trial-counsel claim based on the SLCRC records was also "without merit. Counsel had the records and, as with the medical records, made a reasonable strategic decision not to use" them.

E.    Post-conviction appeal

Petitioner presented two points in his post-conviction appeal, challenging as violations of his Fifth, Sixth and Fourteenth Amendment rights to due process and the effective assistance of trial counsel his trial attorney's failure to introduce at trial the medical records and the SLCRC records. The Missouri Court of Appeals for the Eastern District affirmed the motion court's judgment. King v. State, No. ED103672 (Mo. Ct. App. filed Dec. 6, 2016), Resp't Ex. I [ECF No. 16-6].

In its opinion, the Missouri Court of Appeals described the factual and procedural history of the case as follows:

> The State charged [Petitioner] with two counts of deviate sexual assault . . .
> . The State alleged that between February 14, 2009, and September 4, 2011,

[Petitioner] had deviate sexual intercourse with his stepson ("Victim"). The case proceeded to a jury trial.

At trial, Victim testified that [Petitioner] had anal intercourse with him twenty times after Victim's high school graduation but before his nineteenth birthday. Victim graduated from high school on May 18, 2009, and turned nineteen on February 14, 2010. The alleged abuse occurred in Victim's bedroom at his mother's residence on Saturdays, while his mother attended church and Victim was alone with [Petitioner]. Victim recalled that the sexual acts "felt pretty bad." The State also presented evidence that Victim was at the same developmental level as a seven-to-eight-year-old child.

The State introduced into evidence a video of Victim's interview with the [CAC] on September 13, 2011. In the CAC video, Victim stated that he was "made to remove" his clothing and was told to not tell anyone. Victim remembered that [Petitioner] would place his penis into Victim's butt and sometimes call out Victim's name during the sexual acts. Victim recalled feeling pain, discomfort, and burning during the sexual acts.

At trial, one of [Petitioner]'s defenses centered on Victim's prior recantations of the allegations. [Petitioner] presented the testimony of the former prosecutor in this case, [Ms. Lang], who testified that Victim recanted his allegations during a meeting that occurred after Victim's CAC interview. On cross-examination, Lang stated that Victim later reasserted that [Petitioner] sexually abused him and that his desire to forget about the experience caused his recantation at the meeting. [Petitioner]'s brothers also testified that Victim informed them that [Petitioner] "didn't do it" in a five-way phone conversation with members of [Petitioner]'s family. The State argued that this recantation occurred when [Petitioner]'s family members "ganged-up" on Victim.

[Petitioner] also contended that Victim admitted to hospital personnel, during an emergency room visit on September 15, 2011, that he had not experienced any threats or abuse. Victim recalled at trial that he told hospital personnel that "[n]o, I was no threats or no abuse no nothing . . . , I wasn't hurt by anybody else." Medical records from this emergency room visit noted that Victim "denies threats or abuse. Denies injuries from another." The medical records also stated that Victim's rectum was "unremarkable by inspection other than poor wiping technique." Trial counsel did not offer Victim's medical records into evidence.

The jury found [Petitioner] guilty of one count of deviate sexual assault and acquitted him of one count of deviate sexual assault. Finding [Petitioner] a prior and persistent offender, the trial court sentenced him to fifteen years in prison. After [the Court of Appeals] affirmed his judgment and sentence on direct appeal, [Petitioner] filed an amended [post-conviction relief] motion and alleged that he received ineffective assistance of counsel. Petitioner claimed that trial counsel was ineffective by failing to offer Victim's medical records into evidence because they

confirmed Victim's denial of abuse to hospital personnel. [Petitioner] also claimed that trial counsel was ineffective for failing to offer the SLCRC records into evidence, which [Petitioner] believes would have established a partial alibi and contradicted Victim's testimony by narrowing the possible dates that he could have been alone with Victim while Victim's mother was at church.

At the evidentiary hearing, [Petitioner] testified that he was a resident at the SLCRC from September 20, 2008, until July 7, 2010. The SLCRC documented [Petitioner]'s absences from its premises. [Petitioner] stated that he was not permitted to visit family members, such as Victim, except for a four-hour period on weekends. [Petitioner] testified that he often scheduled his family visits during the evening. Victim's mother attended church on Saturdays from ten in the morning until four or five in the evening. The SLCRC records only showed seven Saturdays between May 18, 2009, and February 14, 2010, on which [Petitioner] checked out during the morning or early afternoon for potential family visits. [Petitioner] contended that these seven Saturdays were the only possible times he could have been at Victim's residence while Victim's mother was at church.

Trial counsel also testified at the evidentiary hearing. Regarding Victim's medical records, [Petitioner]'s trial counsel testified that he had reviewed and considered the records prior to trial. Trial counsel explained his purpose in wanting to establish a rapport with the jury and believed that presenting Victim's medical records, which were created a year and half after the alleged abuse occurred, would have hampered this effort. Additionally, trial counsel determined that Victim's medical records were cumulative, as witnesses' testimony "more or less" introduced the contents of the medical records into evidence. Trial counsel asserted that he "did not want it to come across at trial that I was hanging my hat on one statement in a medical record that on recross or rebuttal from the State a witness could have gotten up and said this is a question that is asked very quickly." Trial counsel wanted to rely on witnesses' testimony over "a few words pulled from a medical record that didn't have context."

Regarding the SLCRC records, trial counsel recalled that he also had received and considered these records before trial. Trial counsel remembered "debating" whether or not to use the SLCRC records in [Petitioner]'s defense before deciding not to introduce the records into evidence at trial. Trial counsel considered as a "factor" in his decision the fact that the SLCRC records were records of the Missouri Department of Corrections. Trial counsel also testified that he had been informed by [the] State that a rebuttal witness was available to testify that the SLCRC records were unreliable and inaccurate. Finally, trial counsel reasoned that the vague timeline as to when the charged crimes occurred decreased the effectiveness of a partial alibi defense.

The motion court denied [Petitioner]'s amended [post-conviction] motion after the evidentiary hearing. The motion court found, as to both claims, that trial counsel made a reasonable, strategic decision not to use the respective records. The motion court also found that trial counsel's decision not to use Victim's medical

records did not prejudice [Petitioner] because this information came into evidence through other testimony.

<u>King</u>, No. ED103672 at 2-5.

Noting that Petitioner must demonstrate both prongs (the performance prong and the prejudice prong) of each ineffective-assistance-of-counsel standard under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Missouri Court of Appeals observed that trial counsel are given "wide latitude in the introduction of evidence . . . [and] [t]rial counsel's strategic decision on the admission of evidence that he or she has received" is generally not disturbed on review. In particular, the Court of Appeals concluded "[t]he extent and manner of impeachment is a matter of trial strategy best left to the judgment of trial counsel" who "may fairly determine that the use of certain impeachment evidence may cause his or her client more harm than benefit." The Court of Appeals found that Petitioner's trial counsel's hearing "testimony show[ed] that he had received Victim's medical records before trial and that he consciously weighed the consequence of offering the emergency room records into evidence [and considered that t]he motion court found trial counsel's testimony . . . credible." Deferring "to the motion court's credibility determinations," the Court of Appeals expressed "reluctan[ce] to disturb trial counsel's decisions made after a thorough investigation of the applicable law and facts."

The Court of Appeals additionally found Petitioner "overstate[d] the significance and clarity of Victim's medical records." After discussing the circumstances and related questions surrounding Victim's reported medical care and trial counsel's testimony regarding his concern that "the State could rebut the effectiveness of the medical record," the Court of Appeals concluded it was "reasonable strategy for trial counsel not to present impeachment evidence that might be easily explained on rebuttal, thereby potentially resulting in trial counsel's loss of credibility before the jury." Moreover, the Court of Appeals found, trial counsel testified he wanted to focus the

jury's attention on "Victim's other recantations and did not want to 'hang his hat' on one sentence from a record that the State could effectively rebut."  The Court of Appeals concluded that "[e]lecting to highlight Victim's other recantations as testified to by live witnesses in the courtroom over a bare statement in the medical record that lacked context was a reasonable strategic decision" that would not and should not under the standard of review be "second-guess[ed]."

Finally, the Court of Appeals found that, without evidence the acts of abuse "would have necessarily resulted in permanent injury or anal scarring that would remain visible following" the "over a year and a half" elapsing between the alleged abuse and the medical examination, Petitioner had not "met his burden to show the admissibility of Victim's medical records" "to prove that Victim was not sexually abused."  Because the record established that Petitioner's trial counsel made a strategic decision regarding M.J.'s medical records and Petitioner failed to show his trial counsel's "actions were unreasonable," the Court of Appeals concluded Petitioner failed to establish his trial counsel rendered ineffective assistance in not admitting those records during trial.

With respect to the SLCRC records, Petitioner argued on appeal that they "would have established a partial alibi and impeached Victim's claim that [Petitioner] abused [Victim] twenty different times."  The Court of Appeals reiterated that "trial counsel has wide latitude in developing evidence during trial, and the introduction of evidence is generally a matter of . . . trial strategy."  With respect to the use of the SLCRC records as an alibi defense, the Court of Appeals stated, "[a] reasonable strategic decision to employ a certain defense theory, even at the expense of another defense theory, does not support a claim for ineffective assistance of counsel."  Moreover, to successfully claim an attorney provided ineffective assistance by "failing to present evidence of

an alibi, the evidence must constitute a viable defense." The Court of Appeals found "the SLCRC records would not have constituted a viable alibi defense" because those "records showed multiple opportunities for [Petitioner] to have sexually assaulted Victim in a manner consistent with Victim's testimony . . . [and] would have merely limited the possible number of Saturdays during which [Petitioner] may have sexually assaulted Victim."

To the extent Petitioner challenged his trial attorney's failure to use the SLCRC records "to impeach Victim's testimony that there were twenty instances of sexual abuse," the Court of Appeals noted "[t]he decision to impeach a witness is presumed to be a matter of trial strategy." The Court of Appeals observed, "[w]hen there are significant considerations weighing against . . . admission [of impeaching evidence]," the Court of Appeals does "not second-guess reasonable trial strategy that declines to introduce the evidence even when trial counsel's strategy does not result in the acquittal of all charges."

The Court of Appeals found that Petitioner's "[t]rial counsel contemplated the consequences of introducing the SLCRC records[,] . . . explained the potential ramifications to both [Petitioner] and his family," and "reasonably believed that offering the SLCRC records would hinder rather than aid [Petitioner]'s defense." "A competent attorney here may have concluded that the jury would want to know why [Petitioner] was monitored by the SLCRC and that the SLCRC records would associate and connect [Petitioner] to the Missouri Department of Corrections" and admission of those records "may have increased the danger that the jury would hear evidence of [Petitioner]'s past felony convictions." Additionally, finding that "preservation of trial counsel's credibility with the jury is a legitimate component of . . . trial strategy" and "[t]he motion court found trial counsel's testimony . . . credible," the Court of Appeals decided "[t]he record clearly showed that trial counsel made a reasonable, strategic decision not to offer the

SLCRC records into evidence" and Petitioner "cannot establish that trial counsel rendered ineffective assistance."

The Court of Appeals issued its mandate on December 29, 2016.[8] Petitioner then filed his habeas petition.

## II. Grounds for relief

Petitioner asserts fourteen grounds for habeas relief, consisting of nine grounds of the allegedly ineffective assistance of Petitioner's trial attorney and five grounds of alleged trial court error. Petitioner bases his ineffective-assistance-of-trial-counsel grounds on his trial attorney's failure:

(1) to introduce at trial Victim's medical records;

(2) to introduce at trial Petitioner's SLCRC records;

(3) to call Petitioner's wife to testify at trial about M.J.'s recantations;

(4) to call Willie King to testify at trial about M.J. "confess[ing] to her";

(5) to call Debra Mathias to testify at trial and to intervene when the prosecutor questioned Petitioner's "witnesses in [the trial] court hallway" without the presence of Petitioner's trial attorney;

(6) to "type[] out or record[] M.J.'s recantation and confession of the truth, by way of an affidavit" when M.J., his mother, and Hassan King "first appeared in [Petitioner's trial attorney's] office";

(7) to call Detective Smith to testify at trial "to show the relevanc[e of] the failed tampering report against [Petitioner] of [M.J.]'s confession and recantation," and to use the tampering report and "all the witnesses involved in the report";

(8) to call Petitioner's wife "to clarify, deny, opinionate, explain, any of the accusation made by M.J.," and "to clear up questions asked about her, [or] made about her by the defense and prosecution"; and

---

[8] See December 29, 2016 entry on docket sheet for King v. State, No. ED103672 (Mo. Ct. App. filed Nov. 17, 2015) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited July 14, 2021)).

(9)   to file a motion for mistrial when the prosecutor "consult[ed] with [Petitioner's] witnesses during trial outside the courtroom" and to advise Petitioner against testifying at trial because the prosecutor "could/would bring up [Petitioner's] past convict[ion]s."

For his grounds based on trial court error, Petitioner focused on:

(10)   the trial judge's finding on the record that Petitioner "had been found guilty of past sex-offenses 'beyond a reasonable doubt,'" which Petitioner argues is not true in that "he plea[] bargain[ed] each time;[9]

(11)   the trial judge's instruction to the jury about not visiting the scene and not conducting independent research or investigation;

(12)   the trial judge's failure to present M.J.'s medical records to the jury;[10]

(13)   the trial judge allowing the prosecutor during her closing argument to misquote Hassan King's opinion, and allowing Hassan King to give his opinion, comparing M.J.'s ability to that of Hassan King's young children; and

(14)   the trial judge's finding M.J. was a "vulnerable person" under Section 491.075.

Respondent counters that the Missouri Court of Appeals considered Petitioner's first, second and fourteenth grounds on their merits and those grounds should be denied because the Court of Appeals' decisions on those issues are not contrary to or an unreasonable application of clearly established federal law and are not based on an unreasonable determination of the facts. With respect to Petitioner's other eleven grounds for relief (Grounds Three through Thirteen), Respondent argues the Court may not consider their merits because they are procedurally defaulted.  Alternatively, Respondent contends Grounds Three through Thirteen lack merit. Because the Court must consider on its merits any ground that is not procedurally barred, the Court

---

[9]  Petitioner also seems to assert the prosecutor violated a jury instruction given by the trial court based on Petitioner's assumption the prosecutor questioned two of Petitioner's witnesses, Debra Mathias and Willie King before moving to exclude those defense witnesses.  See pet'n at 44-45 [ECF No. 1-1].

[10]  Petitioner also appears to claim the defense and prosecution violated his right to a fair trial by failing to present M.J.'s medical records to the jury.

discusses whether Grounds Three through Thirteen are procedurally barred before addressing the merits of any ground for relief.

### III. Discussion

A.  Procedurally-barred claims (Grounds Three through Thirteen)

Respondent argues the ineffective-assistance-of-trial-counsel claims in Grounds Three and Four are procedurally defaulted because Petitioner presented them in his original PCR motion but not in his amended PCR motion.  With respect to Grounds Five through Thirteen, Respondent urges they are procedurally defaulted because Petitioner did not present those claims at any point during his state court proceedings.  Respondent also contends the Court is procedurally barred from considering any of these grounds on the merits because Petitioner did not properly present these eleven grounds to the state courts, and has not shown either cause and prejudice or actual innocence with respect to any of these grounds.

(1)  *Procedural default*

A prisoner in custody under the judgment and sentence of a state court may seek habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); see also 28 U.S.C. §§ 2241(c)(3), 2241(d).  Before seeking federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a habeas petitioner "must first 'exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court.'"[11]  Carney v. Fabian, 487 F.3d 1094, 1096 (8th Cir. 2007) (quoting Middleton v. Roper, 455 F.3d 838, 855 (8th Cir.

---

[11]  A claim is "fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition."  Wemark v. Iowa, 322 F.3d 1018, 1021 (8th Cir. 2003) (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996)).  Respondent's procedural default argument does not focus on the extent to which each of Petitioner's challenged grounds for relief mirrors the statement of a claim Petitioner presented to the state courts, or the fair presentation requirement.  Instead, Respondent's argument focuses on whether Petitioner presented each of the challenged claims in the appropriate state court.  Therefore, the Court need not address whether each of Petitioner's challenged claims was "fairly presented."

2006)). "'If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted.'" Id. (quoting Barrett v. Acevedo, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc)).

Importantly, a petitioner must present the claim to the state courts "in accordance with state procedural rules." Arnold v. Dormire, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (internal quotation marks omitted) (quoting Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009)); accord Sawyer v. Whitley, 505 U.S. 333, 338 (1992) (generally, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure "to follow applicable state procedural rules in raising the claims" in state court). To satisfy the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011) (internal quotation marks omitted) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).

In Missouri state court proceedings, a litigant must raise constitutional claims at the earliest opportunity and preserve them throughout the proceedings. Kirk v. State, 520 S.W.3d 443, 457 (Mo. 2017) (en banc). "Under Missouri law, an appeal to the intermediate state appellate court sufficiently exhausts state remedies to permit federal habeas review under section 2254." Taylor v. Roper, 561 F.3d 859, 861 n.2 (8th Cir. 2009).

A litigant in Missouri must pursue on direct appeal any allegations of trial court errors. See, e.g., Middleton v. State, 103 S.W.3d 726, 740 (Mo. 2003) (en banc) (alleged error in admission of a letter "constitutes a claim of trial error in admission of [a] document . . . [that] must be raised on direct appeal and [is] not cognizable in a post-conviction motion"). This requirement applies to constitutional claims of trial error, which must be raised on direct appeal unless

"fundamental fairness requires otherwise and only in rare and exceptional circumstances.  Davis v. State, 804 S.W.2d 31, 34 (Mo. [Ct.] App. 1990)."  State v. Tolliver, 839 S.W.2d 296, 298 (Mo. 1992) (en banc); accord Eye v. State, 551 S.W.3d 671, 677 (Mo. Ct. App. 2018) ("a juror misconduct claim amounting to a constitutional error can only be raised in a [post-conviction] motion when the factual basis of the juror misconduct was not discovered until after the trial"); Phillips v. State, 214 S.W.3d 361, 364 (Mo. Ct. App. 2007) ("A claim of denial of the right to self-representation and due process is not cognizable in a post-conviction proceeding where it could have been raised on direct appeal").  As the Missouri Supreme Court has stated, a post-conviction proceeding "is not a substitute for direct appeal, and matters that properly should have been raised by direct appeal may not be litigated in a post-conviction proceeding."  State v. Twenter, 818 S.W.2d 628, 636 (Mo. 1991) (en banc).

A post-conviction proceeding is, however, the exclusive procedure for pursuing an ineffective-assistance-of-counsel claim in a Missouri state court; a court's decision on a post-conviction motion is subject to appeal; and a litigant may not file successive post-conviction motions.  Moore-El v. Luebbers, 446 F.3d 890, 896 (8th Cir. 2006); Mo. S. Ct. Rule 29.15.  To exhaust an ineffective-assistance-of-counsel claim, the claim must be raised in the post-conviction appeal.  See, e.g., Osborne v. Purkett, 411 F.3d 911, 919 (8th Cir. 2005).  Any claim that should have been but was not presented in a post-conviction motion or in an appeal from a denial of a post-conviction motion is procedurally defaulted.  Interiano v. Dormire, 471 F.3d 854, 856 (8th Cir. 2006); Sweet v. Delo, 125 F.3d 1144, 1150 (8th Cir. 1997) (finding an ineffective-assistance-of-trial-counsel claim defaulted "when [the petitioner] failed to raise it in his post-conviction appeal").

In his direct appeal, Petitioner did not present the Missouri Court of Appeals with any of the trial-court-error claims now presented in Grounds Ten through Thirteen of the habeas petition. Because Petitioner failed to present to the appropriate state court the trial-court-error claims now presented in Grounds Ten through Thirteen of his habeas petition, those grounds are not exhausted and are procedurally defaulted.

With respect to Petitioner's ineffective-assistance-of-trial-counsel claims, Respondent asserts that Petitioner presented the claims in Grounds Three and Four in his original PCR motion but not in his amended PCR motion. Respondent further asserts Petitioner did not present in any PCR motion the other ineffective-assistance-of-trial-counsel claims, which are now presented as Grounds Five through Nine of his habeas petition. The Court also notes that Petitioner did not present in his PCR appeal any of the ineffective-assistance-of-trial-counsel claims he now presents as Grounds Three through Nine of his habeas petition. Because Petitioner failed to present to the appropriate state court the ineffective-assistance-of-trial-counsel claims now pursued as Grounds Three through Nine in his habeas petition, those grounds are not exhausted and are procedurally defaulted.

(2)     *Cause and prejudice or miscarriage of justice to avoid procedural default*

Respondent urges that Petitioner has not demonstrated either cause and prejudice or a miscarriage of justice sufficient to avoid any of the procedural defaults and to allow this Court's consideration of the merits of the claims in Grounds Three through Thirteen. The Court may not consider the merits of the procedurally defaulted claims in Grounds Three through Thirteen unless Petitioner shows either (1) cause and prejudice or (2) that a miscarriage of justice will occur if the Court fails to consider the grounds because Petitioner is actually innocent of the charge of which he was convicted. See, e.g., Sawyer v. Whitley, 505 U.S. 333, 338-39 (1992).

To demonstrate the cause and prejudice needed to avoid a procedural bar and permit a federal habeas court to review the merits of a defaulted ground for relief, the requisite "cause is established when 'some objective factor external to the defense impede[s] counsel's efforts to comply with the State's procedural rule.' Murray[ v. Carrier], 477 U.S. [478,] 488 [(1986)].'" Ivy v. Caspari, 173 F.3d 1136, 1140 (8th Cir. 1999) (first alteration in original). This requires a petitioner to show, "[a]t a minimum . . . 'something external to [him], something that cannot fairly be attributed to him,' caused the procedural default." Id. (emphasis and alteration in original).

Petitioner has not argued or otherwise presented to the Court any external impediment that caused the failures properly to pursue the procedurally defaulted grounds for relief in the appropriate state court, including the Missouri Court of Appeals. Because Petitioner has not established the requisite cause, the Court need not consider whether Petitioner has demonstrated the prejudice required to overcome the procedural default of those grounds. Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007).

To establish the miscarriage of justice standard to allow the Court to consider the merits of defaulted grounds for relief, a petitioner

> must satisfy a two-part test . . . ." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001). "First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial." Id. "Evidence is only 'new' if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.'" Osborne . . . , 411 F.3d [at] 920 . . . (quoting Amrine, 238 F.3d at 1029). "Second, the petitioner must establish 'that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" Amrine, 238 F.3d at 1029 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

Barton v. Stange, 959 F.3d 867, 872 (8th Cir.) (per curiam decision), cert. denied, 140 S. Ct. 2800 (2020). When a petitioner fails to present new, reliable evidence of innocence, "it is unnecessary to conduct a further Schlup analysis." Nooner v. Hobbs, 689 F.3d 921, 937 (8th Cir. 2012).

In the attachment to his petition, Petitioner mentions "new evidence after conviction" of "letters . . . [Petitioner] has from his former wife (Ernestine King) [of] her still attempting to get more than half of [Petitioner]'s lawsuit" and showing that Hassan King and his girlfriend "fabricated and conspired so they could get [M.J.'s] disability checks." In support, Petitioner cites to letters attached to his original PCR motion. Having reviewed the letters, which appear to have been sent to Petitioner after his conviction, the Court concludes they do not constitute new, reliable evidence demonstrating his innocence of the deviate sexual intercourse offense of which he was convicted. Rather, to the extent statements in the letters address issues arguably pertinent to the prosecution of the offense of which Petitioner was convicted, the statements present: (1) recantation issues that were presented during trial through other means and (2) impeachment matters that do not demonstrate Petitioner's innocence. To the extent the Court should consider the letters as new reliable evidence supporting the miscarriage of justice standard for the Court to consider the merits of procedurally defaulted grounds for relief, Petitioner has not established "'that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" Accordingly, neither cause and prejudice nor a miscarriage of justice exist to avoid the procedural default of Petitioner's claims of trial court error and the ineffective assistance of trial counsel set forth in Grounds Three through Thirteen of his habeas petition. Under the circumstances, the Court denies as procedurally barred and without addressing their merits Grounds Three through Thirteen.

B.     <u>Merits (Grounds One, Two and Fourteen)</u>

(1)     *Standard of review*

As stated earlier, a prisoner in custody under the judgment and sentence of a state court may only seek habeas relief on the ground his custody violates the United States Constitution, laws or treaties. 28 U.S.C. § 2254(a); see also 28 U.S.C. §§ 2241(c)(3), 2241(d). When considering a state prisoner's habeas petition, a federal court is bound by the AEDPA to exercise "only limited and deferential review of underlying state court decisions." Nash v. Russell, 807 F.3d 892, 897 (8th Cir. 2015) (internal quotation marks omitted) (quoting Worthington v. Roper, 631 F.3d 487, 495 (8th Cir. 2011)). A federal court may not grant habeas relief to a state prisoner unless a state court's adjudication of the merits of a claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) ("Taylor"). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular . . . case." Id. at 407-09; see also id. at 413. The test of reasonableness is an objective one. Id. at 409-10; accord White v. Woodall, 572 U.S. 415, 419 (2014).

The "clearly established Federal law" requirement of habeas review under Section 2254(d)(1) requires the habeas court to consider only United States Supreme Court precedent in force when a state court issues its decision. Greene v. Fisher, 565 U.S. 34, 38-40 (2011) (relying on Cullen v. Pinholster, 563 U.S. 170, 182 (2011)); accord Taylor, 529 U.S. at 412. State courts

are not required to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Revels v. Sanders, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)). Importantly, when reviewing a matter under Section 2254(d)(1), a federal habeas court "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181.

The state court record is also significant when a federal habeas court analyzes under Section 2254(d)(2) whether a state court decision on the merits of a claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A federal habeas court "accord[s] the state . . . court substantial deference" and does not supersede the state court's factual determination if "reasonable minds reviewing the record might disagree about the finding in question." Brumfield v. Cain, 576 U.S. 305, 313-14 (2015) (internal quotation marks and citation omitted). For purposes of Section 2254(d)(2), "a state-court factual determination is not unreasonable merely because [a] federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010).

Importantly, "a determination of a factual issue made by a State court [is] presumed to be correct" unless the habeas petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to the factual determinations made by a state court at either the trial or appellate levels, Smulls v. Roper, 535 F.3d 853, 864-65 (8th Cir. 2008) (en banc), and to a state court's implicit findings of fact, Grass v. Reitz, 749 F.3d 738, 743 (8th Cir. 2014). Likewise, federal habeas courts defer to state court credibility determinations, Smulls, 535 F.3d at 864, and to "[a] state court's findings of fact made in the course of deciding" an ineffective-assistance-of-counsel claim, Odem v. Hopkins, 382 F.3d 846, 849 (8th Cir. 2004).

Although the Supreme Court has not yet clarified the relationship between the "unreasonable" provision of Section 2254(d)(2) and the "presumed correct" provision of Section 2254(e)(1), see, e.g., Burt v. Titlow, 571 U.S. 12, 19 (2013); Velez v. Clarinda Corr. Facility, 791 F.3d 831, 834 n.1 (8th Cir. 2015), Eighth Circuit authority supports the granting of habeas relief under Section 2254(d)(2) when a petitioner provides "clear and convincing evidence that the state court's presumptively correct factual finding [that is material to its decision on the merits] lacks evidentiary support. 28 U.S.C. § 2254(e)(1)." Trussell v. Bowersox, 447 F.3d 588, 591 (8th Cir. 2006); accord Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)"). Put another way, a petitioner is entitled to relief under the AEDPA if the state court decision "at issue is based on factual determinations that could not reasonably be derived from the state court evidentiary record." Velez, 791 F.3d at 834.

### (2)    *Ineffective assistance of trial counsel (Grounds One and Two)*

Petitioner contends in Ground One that his trial attorney provided ineffective assistance of counsel by not introducing at trial M.J.'s medical records. In Ground Two Petitioner asserts that his trial attorney provided ineffective assistance of counsel by failing to introduce Petitioner's SLCRC records. The Missouri Court of Appeals addressed these claims on their merits, finding neither prong of the Strickland test satisfied with respect to the claim based on M.J.'s medical records and the performance prong of the Strickland test not satisfied with respect to the claim based on the SLCRC records. Respondent contends the Court should defer to the Court of Appeals' decision and deny these grounds for relief.

The Sixth Amendment's guarantee of counsel is applicable to the States through the Fourteenth Amendment because it is a fundamental right and essential to a fair trial. Gideon v. Wainwright, 372 U.S. 335, 342-45 (1963). Importantly, "the Sixth Amendment does not guarantee the right to perfect counsel," Burt, 571 U.S. at 24, "perfect advocacy judged with the benefit of hindsight," Yarbrough v. Gentry, 540 U.S. 1, 6 (2003) (per curiam), or "the best representation," United States v. Davis, 406 F.3d 505, 510 (8th Cir. 2005). Rather, "[t]he Sixth Amendment right to counsel 'is the right to the effective assistance of counsel.' Strickland, 466 U.S. at 686." Buck v. Davis, 137 S. Ct. 759, 775 (2017).

To establish an ineffective-assistance-of-counsel claim, Strickland requires a showing by a petitioner that: (1) "counsel's representation fell below an objective standard of reasonableness" ("performance prong") and (2) "the deficient performance prejudiced the defense" ("prejudice prong"). Strickland, 466 U.S. at 688, 687. A court need not address both prongs of the Strickland test if it finds the habeas petitioner has not established one of the prongs. Id. at 697 ("there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one"); accord Osborne, 411 F.3d at 918 (stating the petitioner "did not satisfy the performance [prong of the Strickland test so the court] need not consider the prejudice" prong); Odem, 382 F.3d at 851 (stating "[i]t is not necessary for [a court] to consider the prejudice [prong] of the Strickland analysis" after concluding the petitioner did not satisfy the performance prong).

As the Supreme Court has explained, under the AEDPA "[t]he pivotal question" for a federal habeas court reviewing an ineffective-assistance-of-counsel claim that was subject to state court review on the merits, "is whether the state court's application of the Strickland standard was unreasonable." Harrington v. Richter, 562 U.S. 86, 101 (2011). "Establishing that a state court's

application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult." <u>Id.</u> at 105. "The standards created by <u>Strickland</u> and [Section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." <u>Id.</u> (internal citations omitted). Specifically, after a state court reviews the merits of an ineffective-assistance-of-counsel claim, it is not sufficient for a federal habeas petitioner to "show that he would have satisfied <u>Strickland</u>'s test if his claim were being analyzed in the first instance." <u>Bell v. Cone</u>, 535 U.S. 685, 698–99 (2002). Instead, a habeas court "assess[es] the state courts' assessment of counsel's performance." <u>Barnes v. Hammer</u>, 765 F.3d 810, 814 (8th Cir. 2014). Put another way, a federal habeas court views the ineffective-assistance-of-trial-counsel claim through two filters: first, the court defers to the judgment of trial counsel under <u>Strickland</u>, 466 U.S. at 689, and then the court "defer[s] to the state courts' application of federal law to the facts of the case." <u>Marcrum v. Luebbers</u>, 509 F.3d 489, 501 (8th Cir. 2007).

A federal habeas petitioner "must show that the [state court] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner." <u>Bell</u>, 535 U.S. at 699. "A state-court decision is 'unreasonable' within the meaning of [Section] 2254(d) only when it is 'so lacking in justification that there [is] an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" <u>Daniels v. Kelley</u>, 881 F.3d 607, 611 (8th Cir. 2018) (quoting <u>Harrington</u>, 562 U.S. at 103) (second alteration in original).

Because both of Petitioner's ineffective-assistance-of-trial-counsel claims focus on counsel's failure to introduce evidence during trial, the Court discusses the claims together. The Court first addresses whether the Court of Appeals reasonably concluded Petitioner had not established <u>Strickland</u>'s performance prong with respect to either claim. If the performance prong is satisfied with respect to either ineffective-assistance-of-trial-counsel claim, then the Court

addresses whether the Court of Appeals reasonably resolved <u>Strickland</u>'s prejudice prong with respect to that claim.

<u>Strickland</u>'s performance prong "sets a high bar" that is satisfied "only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment.'" <u>Buck</u>, 137 S. Ct. at 775 (quoting <u>Strickland</u>, 466 U.S. at 687). To establish <u>Strickland</u>'s performance prong, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." <u>Armstrong v. Kemna</u>, 534 F.3d 857, 863 (8th Cir. 2008) (citing <u>Strickland</u>, 466 U.S. at 687-94). In analyzing an attorney's performance under <u>Strickland</u> a court must make every effort to eliminate the "distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Bell</u>, 535 U.S. at 698 (internal quotation marks omitted) (quoting <u>Strickland</u>, 466 U.S. at 689).

Additionally, judicial scrutiny of counsel's performance is highly deferential and includes analysis based on a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 689. A court must "strongly presume" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and maintain squarely on the petitioner the "burden to show that counsel's performance was deficient." <u>Burt</u>, 571 U.S. at 22–23 (internal quotation marks and citation omitted).

Furthermore, there is "a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy," <u>Garrett v. Dormire</u>, 237 F.3d 946, 949-50 (8th Cir. 2001) (citing <u>Strickland</u>, 466 U.S. at 689), and "that counsel's strategic choices were

reasonable," Forsyth v. Ault, 537 F.3d 887, 891 (8th Cir. 2008). Counsel's strategic decisions include trial decisions other than the decision whether to plead guilty, waive a jury trial, testify on one's own behalf, and take an appeal. United States v. Washington, 198 F.3d 721, 723-24 (8th Cir. 1999). More specifically, the "presentation of evidence is a matter of trial strategy. Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985)." Walker v. Lockhart, 807 F.2d 136, 139 (8th Cir. 1986). Importantly, "the Constitution's guarantee of effective representation does not require an attorney to submit any minimum amount or particular type of evidence." Johnson v. Lockhart, 921 F.2d 796, 800 (8th Cir. 1990). A petitioner rebuts the presumption of strategy by showing "that counsel's actions actually resulted from inattention or neglect, rather than reasoned judgment." Marcrum, 509 F.3d at 502.

The Court of Appeals' determination that Petitioner's trial counsel's decision not to introduce the records constituted a "reasonable trial strategy" is a finding of fact subject to the reasonableness analysis set forth in Section 2254(d)(2). See Wood, 558 U.S. at 301, 305 (holding under § 2254(d)(2) that the state court's "key factual finding" that counsel made "a strategic decision rather than a negligent omission" when deciding not to pursue and present evidence of the petitioner's mental deficiencies "was not an unreasonable determination of facts" in light of the evidence presented in the state court proceedings). Here, it is undisputed that Petitioner's trial attorney had M.J.'s medical records, as well as Petitioner's SLCRC records, available to him prior to trial. Moreover, while Petitioner may disagree with his trial attorney's decisions regarding the admissibility of those records, there is no dispute that Petitioner's trial attorney deliberately considered whether to introduce the records at trial. The evidence presented in the state court proceedings, in particular the testimony of Petitioner's counsel at the evidentiary hearing in Petitioner's PCR motion proceeding, as well as the evidence introduced during trial, supports the

Court of Appeals' determination that the decision of Petitioner's trial counsel not to introduce the records resulted from "reasoned judgment" or deliberate choice, rather than from counsel's oversight, inattention or neglect. Id. at 301-02; Marcrum, 509 F.3d at 502. Therefore, the Missouri Court of Appeals' characterization of this alleged failure by counsel as reasonable trial strategy is not an unreasonable determination of the facts in light of the evidence presented in the state court proceedings under § 2254(d)(2).

This Court also considers under Section 2254(d)(1) whether the strategic decision itself was a reasonable exercise of the attorney's professional judgment under Strickland and whether the Missouri Court of Appeals' application of Strickland was reasonable. Wood, 558 U.S. at 304. The state court record establishes Petitioner's trial counsel decided not to introduce the records after considering other evidence he planned to introduce, other evidence available of record, the defense presented, and counsel's credibility in the eyes of the jury. Under the circumstances, the record supports the reasonableness of trial counsel's strategic decision not to introduce the records, as well as the objective reasonableness of the Court of Appeals' decisions that Petitioner's trial counsel did not engage in deficient performance by failing to introduce the records.

Moreover, to the extent the state courts' decisions relied on consideration of witnesses' credibility, including the credibility of Petitioner and Petitioner's trial counsel whose testimony was presented during the evidentiary hearing on Petitioner's amended post-conviction motion, this Court cannot substitute its judgment as to the credibility of the witnesses for the judgment of the state court. See Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (a federal habeas court has "no license to redetermine the credibility of witnesses whose demeanor has been observed by the state . . . court"); Kennedy v. Kemna, 666 F.3d 472, 484 (8th Cir. 2012) (a federal habeas court "must

defer to the credibility determinations of the motion court.  <u>Perry v. Kemna</u>, 356 F.3d 880, 885 (8th Cir. 2004)").

After review of the state court record with respect to Petitioner's trial and PCR motion proceedings and after deferring to the state courts' credibility determinations, the Court concludes that the Missouri Court of Appeals' decision that Petitioner's trial counsel did not engage in deficient performance by failing to introduce M.J.'s medical records and Petitioner's SLCRC records during trial was not an unreasonable application of <u>Strickland</u> and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Having concluded the Missouri Court of Appeals reasonably concluded Petitioner did not establish his trial counsel's deficient performance in failing to introduce the records, the Court need not address <u>Strickland</u>'s prejudice prong with respect to either of those failures.  <u>Strickland</u>, 466 U.S. at 697; <u>accord</u> <u>Osborne</u>, 411 F.3d at 918; <u>Odem</u>, 382 F.3d at 851.  Accordingly, the Court denies on their merits Petitioner's ineffective-assistance-of-trial-counsel claims in Grounds One and Two of his habeas petition.

### (3)  *Vulnerable person determination (Ground Fourteen)*

In his Fourteenth Ground, Petitioner claims that the trial court improperly decided M.J. fell within the terms of "vulnerable person" under Section 491.075.  In particular, Petitioner challenges the trial judge's comparison of M.J. to the judge's grandchild and sets forth circumstances pertaining to M.J. that were not explicitly discussed by the state courts.  Respondent counters that matters of state law are not proper subjects of federal habeas review and, even if this Court could properly review this claim, the ground is meritless.

As noted before, federal habeas relief is only available to someone in custody in violation of the United States Constitution or in violation of federal laws or treaties.  <u>Estelle v. McGuire</u>,

502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal habeas court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"). "'[F]ederal habeas corpus relief does not lie for errors of state law.' Lewis v. Jeffers, 497 U.S. 764, 780 (1990).'" Estelle, 502 U.S. at 67. Therefore, "in habeas corpus proceedings, it is not within [the federal court's] province 'to re-examine state-court determinations on state-law questions.'" Johnston v. Luebbers, 288 F.3d 1048, 1056 (8th Cir. 2002) (quoting Estelle, 502 U.S. at 67-68); accord Taylor v. Bowersox, 329 F.3d 963, 968 (8th Cir. 2003) ("A state's interpretation of its own law is virtually unreviewable by a federal court"); Sweet, 125 F.3d at 1151 ("It is not the office of a federal habeas court to determine that a state court made a mistake of state law").

On direct appeal, the Court of Appeals concluded the trial court did not err in deciding that M.J. was a "vulnerable person" under Section 491.075 and disagreed with Petitioner's argument that the evidence was insufficient to make this decision. Viewing "the evidence in the light most favorable to the trial court's ruling," the Court of Appeals expressly found

> The evidence showed that M.J.'s IQ was at a level considered to be mentally retarded or intellectually disabled. M.J. functioned at the level of a fourth grader, which is a 10-year-old. The cumulative evidence of testimony from Ms. Tucker, Hassan King, and the special education supervisor, and the CAC interview itself, was more than sufficient to support the finding that M.J. functioned beneath the level of a 14-year-old, and thus, was a "vulnerable person."

Petitioner now challenges the state courts' "vulnerable person" decision solely due to the state courts' allegedly erroneous consideration of M.J.'s circumstances and statements made by the trial court. Petitioner does not present any federal law challenge to the decision.

Because Petitioner merely challenges the factual basis for the state courts' conclusion that M.J. is a "vulnerable person" under a state statute, and does not contend that conclusion violates any provision of the federal constitution, a federal statute or a federal treaty, the Court denies Petitioner's Ground Fourteen without further discussion as not cognizable in this proceeding.

Accord Wilson v. Cocoran, 562 U.S. 1, 5 (2010) (per curiam) ("[O]nly noncompliance with federal law" renders a state court criminal judgment "susceptible to collateral attack in the federal courts" (emphasis in the original)); Poe v. Caspari, 39 F.3d 204, 206-07 (8th Cir. 1994) (finding a federal habeas petitioner's claim "based only on Missouri law and actions of Missouri officials, . . . may be addressed only by the Missouri courts" and a question "whether the Missouri courts had jurisdiction to sentence [the petitioner] was one solely of state law and . . . therefore not properly before" the federal habeas court).

### IV. Certificate of appealability

A certificate of appealability ("COA") is required before a court of appeals may consider an appeal of a final order in a habeas proceeding under 28 U.S.C. § 2254. 28 U.S.C. § 2253(c)(1); Fed. R. App. 22(b)(1). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). Importantly,

> [t]he COA inquiry . . . is not coextensive with a merits analysis. At the COA stage, the only question is whether the applicant has shown that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."

Buck, 137 S. Ct. at 773 (quoting Miller-El v. Cockerell, 537 U.S. 322, 327 (2003)). The "threshold question should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" Id. (quoting Miller-El, 537 U.S. at 336).

With respect to claims the federal habeas court resolves on the merits, a COA may issue if a petitioner demonstrates "reasonable jurists would find the . . . court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a federal habeas court resolves a ground for relief on procedural grounds,

> without reaching the [merits of the petitioner's] underlying constitutional claim, a COA should issue when the [petitioner] shows, at least, that jurists of reason would

find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Id. Importantly, a court may "resolve the issue whose answer is more apparent from the record and arguments." Id. at 485.

The Court concludes Petitioner cannot make a showing that the Court's assessment and resolution of Petitioner's grounds for relief are debatable or wrong as required by Buck, Miller-El, and Slack. Therefore, the Court will not issue a COA with respect to any aspect of the denial of Petitioner's petition.

## V. Conclusion

The Court does not address the merits of Petitioner's trial-court-error and ineffective-assistance-of-trial-counsel claims presented in Grounds Three through Thirteen of the petition and denies those claims as procedurally barred. Additionally, the Court denies on their merits the claims Petitioner pursues as Grounds One, Two, and Fourteen of his petition.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Richard Adams, the present Warden of the MECC, is **SUBSTITUTED** for the originally named Respondent in this habeas proceeding.

**IT IS FURTHER ORDERED** that Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

**IT IS FINALLY ORDERED** that the Court will not issue a Certificate of Appealability.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

_Patricia L. Cohen_
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of July, 2021